# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America, | Crim. No. 10-195 (JNE/JJK) |
| Plaintiff, | |
| v. | |
| (3) Brenda L. Epperly, | **REPORT AND RECOMMENDATION** |
| Defendant. | |

James E. Lackner, Esq., Assistant United States Attorney, counsel for Plaintiff.

Frederic W. Knaak, Esq., Knaak & Kantrud, counsel for Defendant Epperly.

JEFFREY J. KEYES, United States Magistrate Judge

This matter is before the Court on Defendant Brenda Epperly's Motion to Suppress Evidence (Doc. No. 48). This Court held a hearing on the motion on September 21, 2010,[1] and received testimony from the following witnesses: Department of Commerce investigator Julie Kosmalski and former Department of Commerce investigator Darci Bachmeier-Juniper for the Government, and Defendant Brenda Epperly for the defense. This Court also received two exhibits from the Government, which included the August 19, 2008 Subpoena Duces Tecum at issue, and a copy of the Tennessen warning allegedly provided to

---

[1] On September 22, 2010, this Court issued an Order, amended on September 23, 2010, concerning various other motions and took Defendant Epperly's Motion to Suppress Evidence (Doc. No. 48), under advisement on October 12, 2010, for submission to the District Court on a Report and Recommendation. (Doc. No. 69.)

Defendant Epperly. The matter was referred to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636 and D. Minn. Loc. R. 72.1. For the reasons stated below, this Court recommends that Defendant Epperly's motion be denied.

## BACKGROUND[2]

The Department of Commerce regulates real-estate brokers and closers pursuant to Chapter 82, and generally, pursuant to Chapter 45. (Tr. 16.) The Department of Commerce's regulations allow investigators to review books and records of real-estate brokers and real-estate closers, which sometimes involves going on site to examine and obtain records. (Tr. 15-16.) Pursuant to Minnesota law, real-estate brokers and real-estate closers are required to keep records for a period of three years. (Tr. 16.)

On August 19, 2008, Ms. Kosmalski and Ms. Bachmeier-Juniper visited Pro Closers, a business run by Defendant Epperly. At that time, the Department of Commerce regulated Defendant Epperly under Chapter 82 based on her status as a licensed real-estate broker, and pursuant to regulations, was allowed

---

[2] The following summary is based on Julie Kosmalski, Darci Bachmeier-Juniper, and Defendant Brenda Epperly's testimony provided at the September 21, 2010 hearing and the hearing exhibits. Ms. Kosmalski works in the Market Assurance Division (aka the Enforcement Division) for the Minnesota Department of Commerce conducting real-estate and mortgage investigations, and has worked there for twenty years. (Doc. No. 76, 9/22/10 Am. Hearing Transcript ("Tr.") 15.) Darci Bachmeier-Juniper currently works for U.S. Bank reviewing appraisals for direct lending. (Tr. 42-43.) In August 2008, she worked for the Department of Commence, and at that time, had worked there for one year as a senior investigator. (Tr. 43.)

to review her records. (Tr. 16-17, 43.) The nature of the investigation was to look for evidence of "builder bailout," which was explained by Ms. Kosmalski as "when a builder has an excess inventory of properties that they're trying to unload and [they] will get creative with how they unload those properties." (Tr. 18.) The creative unloading involves mortgage fraud. (Tr. 18-19.) During the Department's administrative investigation, Defendant Epperly was identified as someone who was potentially involved in fraud. (Tr. 19-20.) Some of the records to be reviewed at Pro Closers were purchase agreements, listing agreements, settlement statements, mortgage loan applications, disbursement sheets, and ledger balance sheets (i.e., closing files). (Tr. 17, 43.)

On August 19, 2008, Ms. Kosmalski and Ms. Bachmeier-Juniper —who also worked with appraisers, real-estate agents, and in the mortgage area— arrived at Pro Closers midmorning. (Tr. 21.) Upon arrival, they explained to the receptionist who they were, and that they would like to speak to Defendant Epperly. (Tr. 21-22.) The receptionist informed Defendant Epperly, and she came to meet the two investigators. (Tr. 22.) Ms. Kosmalski and Ms. Bachmeier-Juniper identified themselves to Defendant Epperly as investigators from the Department of Commerce. (Tr. 22.) Both Ms. Kosmalski and Ms. Bachmeier-Juniper testified that Ms. Bachmeier-Juniper handed Defendant Epperly a copy of a subpoena and a copy of a Tennessen warning.

3

(Tr. 23, 44; Hr'g Exhs. 1, 2.)[3] Defendant Epperly testified, however, that she has never seen the Tennessen-warning document before. (Tr. 49.) Ms. Kosmalski explained to Defendant Epperly that the documents were a subpoena and the Tennessen warning, and that she should take some time to read it. (Tr. 27.) Ms. Kosmalski did not have a discussion with Defendant Epperly about whether the investigation was civil or criminal in nature, and testified that the subpoena delivered was administrative and is something that her department issues and uses routinely. (Tr. 31, 36, 53.) In addition, she explained that she was required to get authorization from her supervisor to issue such an administrative subpoena. (Tr. 41.)

The face of the subpoena states that "[f]ailure to provide evidence as required by this Subpoena will result in a penalty pursuant to Minn. Stat. §[]45.027, subd. 3 and 6." (Hr'g Ex. 1.) Ms. Kosmalski acknowledged that Minn. Stat. § 45.027 gives her department authority to sanction regulated persons, and indicates that the Commissioner may take someone's license away for failure to comply. (Tr. 37-38.) The copy of the Tennessen warning states the following:

1. This data is being collected as part of an investigation into your conduct, and the data will be used to determine whether you have violated any statutes or rules enforced or administered by this Department.

2. Under Minnesota Statute section 45.027 you are required to cooperate with investigations of the commissioner of Commerce. You are advised that you are not required to

---

[3] Ms. Bachmeier-Juniper testified that they "give the subpoena and the Tennessen together at all times." (Tr. 45.)

4

>   incriminate yourself in any possible criminal investigation and you may exercise your constitutional right to refuse to answer any request for data.
>
> 3. If you supply the data requested and it shows a violations of any of the statutes or rules regulated by the Department of Commerce, you may be subject to disciplinary or other action by the Department. However, if you refuse to supply the data requested (except refused based upon the privilege against self-incrimination), the Commissioner of Commerce has the authority under Minnesota Statute section 45.027 to take disciplinary or other action for failure to cooperate with an investigation. If you choose to exercise your constitutional right to refuse to answer, the Department will base its decision whether to pursue action against you based on the other information which is available to the Department.
>
> 4. You are advised that the data which you supply may be released to other persons and/or governmental entities who have statutory authority to review the data, investigate specific conduct and/or take appropriate legal action.

(Hr'g Ex. 2.)

Ms. Kosmalski testified that she does not recall having any conversation about § 45.027 or the authority it provides with Defendant Epperly, nor does she recall Defendant Epperly expressing concern about the possibility of her losing her license. (Tr. 38.) More specifically, on re-direct, Ms. Kosmalski testified that she did not ever advise, nor did anyone else in her presence advise, Defendant Epperly that if she did not comply and give her the records that she would lose or could lose her license. (Tr. 55.) This confirms her earlier testimony that she did not ever discuss with Defendant Epperly what would happen if she did not comply with the subpoena, and she did not tell her or threaten her that she would lose her license if she did not comply. (Tr. 31.) Ms. Kosmalski also testified that

5

even though the administrative subpoena was issued under the laws of Minnesota, she does not actually need a subpoena to get the documents. (Tr. 41-42.) And it was not usually the practice of the Department in a case like this to obtain a written acknowledgement on the part of the individual that she has received a Tennessen warning. (Tr. 26.)

Defendant Epperly testified that she knew in 2008 that, pursuant to Department of Commerce regulations, she was required to keep records, and that as a real-estate agent and a broker, she was supposed to give the documents to the Department of Commerce when they asked for it or they could take her license away. (Tr. 50, 52.) Defendant Epperly further testified that on August 19, 2008, she asked the investigators a question regarding possible penalties for not complying with the subpoena, and asserts that the investigators answered that *depending on what they found*, she could lose her license. (Tr. 48 (emphasis added).) Later, Defendant Epperly testified, however, that she had asked the investigators what would happen if she did not give up the documents, and the investigators answered that she *would* lose her license. (Tr. 53 (emphasis added).)

After Defendant Epperly completed her page-by-page review of the documents, Ms. Kosmalski and Ms. Bachmeier-Juniper asked her if she had any questions. (Tr. 30, 44.) According to Ms. Kosmalski, Defendant Epperly stated that she did not have any questions. (Tr. 30.) Defendant Epperly testified that after reading the subpoena, it appeared to her that it was something that was

6

legal and that she had to comply with. (Tr. 48.) Defendant Epperly then led the two investigators into her office to show them where the files were maintained, and Defendant Epperly began to bring documents to them. (Tr. 30.)

Ms. Kosmalski and Ms. Bachmeier-Juniper were at Pro Closers for approximately five to six hours reviewing real-estate files. (Tr. 32.) They did take some of the real-estate documents with them when they left, including records relating with the property located at XXXX Wildhurst. (Tr. 32-33.)

Ms. Kosmalski testified that she had not had any contact on or before August 19, 2008, with anyone from law enforcement concerning this case, and that she was making the visit to Pro Closers on her own for the Department of Commerce. (Tr. 20.) According to Ms. Kosmalski, everything she did on August 19, 2008, at Pro Closers was the "normal procedure" for a Department of Commerce investigation. (Tr. 20.)

A couple of days after August 19, 2008, Ms. Kosmalsky and Ms. Bachmeier-Juniper returned to Pro Closers to obtain additional files. (Tr. 33.) When they arrived, Ms. Kosmalsky observed three to five gentlemen sitting in a conference room, appearing to be taking part in a closing. (Tr. 33.) When the men saw the investigators, they ran out the door. (Tr. 33.) Defendant Epperly then approached the investigators, and the investigators explained that they were there to obtain additional documents under the authority of the original subpoena. (Tr. 33, 39.) Defendant Epperly told the investigators that she wanted to contact her attorney. (Tr. 33.) The investigators told her that was fine,

and they waited in a common area for approximately an hour for the attorney to show up. (Tr. 33.) When the attorney arrived, the investigators explained that they had served a subpoena a couple of days prior and had obtained some documents, and that they wanted to obtain some additional documents. (Tr. 34.) The attorney told them that was fine, and that he wanted Defendant Epperly to comply. (Tr. 34.) The investigators then reviewed more documents. (Tr. 34.)

In January 2009, Ms. Kosmalsky placed a call to Andy Gibbert with the IRS to tell him what information the Department of Commerce had regarding Defendant Epperly; Mr. Gibbert did not confirm at that point, however, that there was a criminal investigation with respect to her. (Tr. 35.) According to Ms. Kosmalsky, the first time she learned that there was a criminal investigation into Defendant Epperly would have been after January 2009. (Tr. 35-36.) Defendant was subsequently indicted for Mortgage Fraud through use of Interstate Wires in violation of Title 18, United States Code, Section 1343. (*See* Doc. No. 1.)

## DISCUSSION

Defendant Epperly moves to suppress all evidence obtained through the Minnesota Department of Commerce on the grounds that it used its civil investigative authority improperly and conveyed to the Government private data on Defendant Epperly: (1) without appropriate notice; (2) in violation of due process under the Fifth Amendment because the civil investigation was done in bad faith (i.e., was a pretext to obtain evidence for criminal prosecution); (3) in

8

violation of the Fourth Amendment because the search was unreasonable when the Government obtained the information through use of affirmative misrepresentations, trickery, or deceit; and (3) in violation of her constitutional right to remain silent and the *Garrity* rule.  The Government acknowledges that one set of documents in this case was obtained by the Minnesota Department of Commerce from Defendant Epperly through an administrative subpoena.  However, the Government asserts that the Minnesota Department of Commerce was not acting "in cooperation" with the IRS or any federal agency at the time that it issued the subpoena, and that, in fact, the federal investigation had not started at that time.  Further, the Government asserts that even had the state agency and its civil agents known of a federal investigation, there is no evidence that the Department's investigators affirmatively misled Defendant Epperly.  In addition, the Government argues that Defendant Epperly was not compelled to produce any documents in violation of the Fifth Amendment or *Garrity*.  This Court addresses each argument in turn.

I.     **Notice/Due Process/Unreasonable Search**

Defendant bases her first three arguments on her belief that the Government developed the present criminal case under the auspices of a civil investigation.  But the unrebutted evidence shows that the Department of Commerce investigators did not know of any criminal investigation in relation to Defendant Epperly at the time that it conducted its investigation in August 2008, and the investigators were investigating Defendant Epperly in an

9

administrative/civil capacity only when it visited Pro Closers to review real-estate documents.  There is no evidence that the Government was involved in, or even knew of, the administrative review that the Department of Commerce was conducting in 2008.  And there is no evidence in the record before this Court that Defendant Epperly was a target of a criminal investigation at that time at all.  Therefore, neither the Government nor the investigators had a duty to inform Defendant Epperly that she was a target of a criminal investigation at the time that the administrative investigation was conducted in August 2008.

In addition, there is no evidence that the Government affirmatively misled Defendant Epperly into believing that the investigation was exclusively civil in nature and would not lead to criminal charges.  The Tennessen warning stated the following:

> 4. You are advised that the data which you supply may be released to other persons and/or governmental entities who have statutory authority to review the data, investigate specific conduct and/or take appropriate legal action.

(Hr'g Ex. 2.)  Even assuming that the Tennessen warning was not provided to Defendant Epperly (as explained below, this Court believes that it was provided), the topic of whether the investigation was civil or criminal in nature never came up.  There were no affirmative representations made in that regard.  And the mere failure to inform Defendant Epperly that information developed in its investigation may result in a further criminal investigation does not indicate affirmative and intentional deceit by the Department of Commerce.  *See United*

States v. Grunewald, 987 F.2d 531, 534 (8th Cir. 1993) ("[T]he mere failure of an IRS agent to inform a defendant that information developed in an audit may result in a further criminal investigation does not indicate affirmative and intentional deceit by the IRS."). Therefore, Defendant Epperly's arguments regarding lack of proper notice, using a civil investigation as a pretext to obtain evidence for criminal prosecution, and the use of affirmative misrepresentations, trickery, or deceit fail.[4]

## II. Right to remain silent

Defendant Epperly also asserts that she was compelled to produce her real-estate records because the language on the face of the subpoena stated that "[f]ailure to provide evidence as required by this Subpoena will result in a penalty pursuant to Minn. Stat. §45.027, subd. 3 and 8" (Hr'g Ex. 1), and the investigators' alleged statements indicated that if she failed to cooperate she would lose her license. According to Defendant Epperly, the investigators did not provide her with a Tennessen warning that would have informed her of her rights against self-incrimination. Defendant Epperly contends that the combination of the threats of losing her license and not being informed of her right to remain silent violated her Fifth Amendment rights, and therefore the Government should not be able to use the coerced information as the basis of the subsequent

---

[4] Defendant Epperly also asserts that she should have been provided notice of the criminal investigation at the point when the Department of Commerce ultimately handed the seized materials over to the Government. However, Defendant Epperly cites no authority on point that would require the Department of Commerce to provide such notice.

11

criminal charges, citing *Garrity v. State of New Jersey*, 385 U.S. 511 (1967). The Government disagrees, and asserts that (1) Defendant was not compelled to turn over the records, and (2) the Fifth Amendment does not apply because of the public records/required records doctrine.

To establish a Fifth Amendment violation, Defendant Epperly must prove that her statements were (1) compelled; (2) testimonial in nature; and (3) incriminating. *See United States v. Hubbell*, 530 U.S. 27, 34-35 (2000). "The Fifth Amendment is violated only by the combined risks of both compelling the [person] to answer incriminating questions and compelling the [person] to waive immunity from the use of those answers." *Hill v. Johnson*, 160 F.3d 469, 471 (8th Cir. 1998). And for any *Garrity*-type relief to even be considered, Defendant Epperly must establish that she had an objectively reasonable belief that she would lose her license if she chose not to provide the subpoenaed documents. The key question here is whether the subpoenaed documents were compelled in violation of the Fifth Amendment. This Court concludes that the answer to that question is no.

It is undisputed that Defendant Epperly was regulated by the Department of Commerce as a real-estate broker and closer, that she was required to keep real estate records for three years, and that Defendant Epperly knew of her obligations to keep her real estate records and of the right of the Department of

Commerce to review those documents.[5] It is also undisputed that when the investigators arrived at Pro Closers on August 19, 2008, they identified themselves as investigators for the Department of Commerce to Defendant Epperly, and explained that they were there to review her real-estate documents. In addition, both investigators testified that a copy of the Tennessen warning was provided to Defendant Epperly at the same time that the administrative subpoena was provided to her, and that Defendant Epperly took several minutes to look at each page of the documents provided. The investigators also asked Defendant Epperly whether she had any questions, and she said no.

First, the face of the subpoena itself did not state that if Defendant Epperly did not comply with the subpoena, then her license would be taken away. The subpoena stated, "[f]ailure to provide evidence as required by this Subpoena will result in a penalty pursuant to Minn. Stat. §[]45.027, subd. 3 and 8." (Hr'g Ex. 1.) Subdivision 3 of this statute states the following:

> In case of a refusal to appear or a refusal to obey a subpoena issued to any person, the district court, upon application by the commissioner, *may issue* to any person an order directing that person to appear before the commissioner, or the officer designated by the commissioner, there to produce documentary evidence if so ordered or to give evidence relating to the matter under investigation or in question. Failure to obey the order of the court *may be punished* by the court as a contempt of court.

---

[5] Minn. Stat. § 82.45 provides that "the Commission may make examination . . . of each broker's or closing agent's records at such reasonable time and in such scope as is necessary to enforce the provisions of this chapter." Minn. Stat. § 82.45, subd. 2.

Minn. Stat. § 45.027, subd. 3 (emphasis added). Therefore, this subdivision describes that the person who does not comply with the subpoena could be ordered by a district court to appear before the commissioner to produce documentary evidence or to give evidence relating to the matter, and could be punished by the court if they failed to comply. This subdivision does not mandate that either occur and it does not require revocation of a license. Subdivision 8 states:

> In addition to any other actions authorized by this section, the commissioner *may issue* a stop order denying effectiveness to or suspending or revoking any registration.

Minn. Stat. § 45.027, subd. 3 (emphasis added). This subdivision also does not mandate revocation of a license, but provides the commissioner options in the punishment it decides to issue. Therefore, by stating on the face of the subpoena that "[f]ailure to provide evidence as required by this Subpoena *will result in a penalty* pursuant to Minn. Stat. §[]45.027, subd. 3 and 8" (Hr'g Ex. 1 (emphasis added)), that "penalty" is not necessarily revocation of a license. The statute is worded broadly so that various penalties could be imposed, either by a court or by the commissioner.

Second, although Defendant Epperly disputes that she was provided a copy of the Tennessen warning, based on the consistency of their testimony, their demeanor, and their lack of bias in the matter, as well as Ms. Kosmalski's memory of other details from their visit to Pro Closers on August 19, 2008, the Court finds the investigators' testimony that she was given the warning more

credible. The Tennessen warning stated that, "Under Minnesota Statute section 45.027 [which is the same statute referenced on the face of the subpoena] you are required to cooperate with investigations of the commissioner of Commerce." (Hr'g Ex. 2.) However, the Tennessen warning stated immediately thereafter that, "You are advised that you are *not required* to incriminate yourself in any possible criminal investigation and *you may exercise your constitutional right to refuse to answer any request for data*." (*Id.* (emphasis added).) The Tennessen warning further explained that if she chose to supply the data requested and it showed a statutory or rule violation, she "*may* be subject to disciplinary or other action by the Department." (*Id.* (emphasis added).) The warning also explained that if she chose to refuse to supply the data based on her exercising her constitutional right to refuse to answer, then the Department would base its decision on whether to pursue any action against her based on the other information available to the Department. (*Id.*) It was only if she refused to supply the data requested, outside of asserting any constitutional right to refuse to answer, that the Commissioner of Commerce would have the authority under Minnesota Statute section 45.027 to take disciplinary or other action for failure on her part to cooperate with the investigation. (*Id.*) Therefore, the Tennessen warning was clear that Defendant Epperly was not being compelled to incriminate herself.

Further, although Defendant Epperly testified that the investigators told her that she would lose her license if she did not produce the documents,

15

Ms. Kosmalski testified that neither she nor Ms. Bachmeier-Juniper advised or threatened Defendant Epperly that if she did not produce the records that she would or could lose her license. Nor did they even discuss what would happen if Defendant Epperly did not produce the documents requested. Again, for the reasons stated above, the Court finds the investigators' testimony more credible.[6] In addition, upon their second visit, Defendant Epperly requested and was provided the opportunity to consult an attorney, who advised her to produce the documents requested. All of the above evidence supports the conclusion that Defendant Epperly was not compelled to comply with the administrative subpoena and her Fifth Amendment right against self-incrimination was not violated. *See Hill*, 160 F.3d at 471 (concluding that there was no Fifth Amendment violation when the defendant "was neither forced to answer incriminating questions under threat of termination nor required to relinquish immunity for the use of his answers in criminal proceedings"). And further, because any threat of job loss was inferred and was not automatic or certain, any *Garrity* rights were not implicated. *See United States v. Stein*, 233 F.3d 6, 16 (1st Cir. 2000) (stating that it was not enough that a risk of job loss arises from refusing to waive Fifth Amendment rights; the loss must be automatic or certain);

---

[6] Further, if Defendant Epperly feared that if she did not comply with the administrative subpoena she would lose her license, which this Court does not doubt may have been a genuine fear, such subjective fears are not sufficient to establish compulsion to support a Fifth Amendment violation. *See United States v. Cranley*, 350 F.3d 617, 622 (7th Cir. 2003) (stating that "fear of revocation is not a ground for ruling that a probationer's confession deprived him of his Fifth Amendment privilege").

*United States v. Bowers*, 739 F.2d 1050, 1056 (6th Cir. 1984) (finding no *Garrity* violation when the employee was not told he would be disciplined if he refused to answer questions). Here, Defendant Epperly was not told she would lose her job if she did not comply with the administrative subpoena, and the Tennessen warning stated that if she chose to refuse to supply the data based on her exercising her constitutional right to refuse to answer, then the Department would base its decision on whether to pursue any action against her based on the other information available to the Department. Action by the Department was not certain at this point, and if action was sought, revocation of licensure was not necessarily the action that would be pursued.

And further, if Defendant Epperly chose not to assert her right against self-incrimination, but yet still refused to supply the data requested, the Tennessen warning explained that the Commissioner of Commerce would have the authority under Minnesota Statute section 45.027 to take disciplinary or other action for failure on her part to cooperate with the investigation. Again, even though the Commissioner of Commerce would have the authority to revoke her license, it was not certain that it would do so. Therefore, Defendant Epperly was not compelled to produce the documents in violation of the Fifth Amendment, and she did not have an objectively reasonable belief that she would lose her license if she chose not to provide the subpoenaed documents, therefore invoking the

*Garrity* rule. Accordingly, this Court recommends that Defendant Epperly's motion to suppress should be denied.[7]

## RECOMMENDATION

**IT IS HEREBY RECOMMENDED** that:

1. Defendant Brenda Epperly's Motion to Suppress Evidence (Doc. No. 48), be **DENIED**.

Date: October 19, 2010

*s/ Jeffrey J. Keyes*
JEFFREY J. KEYES
United States Magistrate Judge

Under D. Minn. LR 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **November 2, 2010**, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals. A party may respond to the objecting party's brief within **fourteen days** after service thereof. All briefs filed under this rule shall be limited to 3500 words. A judge shall make a de novo determination of those portions of the Report to which objection is made. This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable directly to the Circuit Court of Appeals.

---

[7] Because this Court concludes that the documents were not compelled in violation of the Fifth Amendment, and the *Garrity* rule does not apply, this Court need not address the Government's additional argument regarding the required-records exception to the Fifth Amendment. However, this Court notes that the Supreme Court has recognized that the required-records doctrine is an exception to the assertion of the Fifth Amendment privilege against compelled testimonial self-incrimination, *see, e.g., Davis v. United States*, 328 U.S. 582, 593 (1946), and in all likelihood, the documents at issue here would qualify as required records.